Warren MORRIS and June D. Morris, Husband and Wife
*v.* M. James MEDIN, et al. and Howard Lloyd Muirhead
and Marilyn J. Muirhead, *Intervenor Appellees*
CA 92-911                                                 858 S.W.2d 142
Court of Appeals of Arkansas
En Banc
Opinion delivered July 7, 1993
[Rehearing denied August 18, 1993.*]

---

*Robbins, J., would grant rehearing.

*Burrow & Sawyer*, by: *Stephen P. Sawyer*, for appellants.

*Williams, Schrantz, Croxton, Boyer, Rhoades, Shafer & Cochran, P.A.*, by: *R. Douglas Schrantz*, for appellees.

*Matthews, Campbell & Rhoads, P.A.*, by: *David R. Matthews*, for intervenors.

JAMES R. COOPER, Judge. This appeal concerns the process to be used in the election of the Board of Directors of the Bella Vista Property Owners Association (POA). The chancellor ruled that all members of the Bella Vista Property Owners Association are entitled to only one vote for each lot owned in the election for the Board of Directors. For reversal, the appellants assert that the chancellor erred in interpreting the Declaration and Protective Covenants, Articles of Incorporation, and Bylaws of the POA, and contend that each member of the POA should have one vote in the election for the Board of Directors.

The appellants are owners of a lot in Bella Vista Village in Benton County. As lot owners, they are members of the POA. The appellees are the former President and General Manager, and Board of Directors of the POA. The intervenor appellees are husband and wife who own separate lots in their individual capacities.

Bella Vista Village, originally incorporated as the Bella Vista Country Club, is a nonprofit corporation organized under the laws of the State of Arkansas. It is a recreational retirement community developed by Cooper Communities, Inc., formerly known as Cherokee Village Development Company, Inc., consisting of approximately 37,000 lots or living units, approximately 4,000 of which are improved. The POA owns and operates recreational facilities consisting of golf courses, swimming pools, tennis courts, clubs and restaurants, among other facilities and common properties. The POA also provides water and sewer facilities, fire protection, emergency services, and police protection through the Benton County Sheriff's Office.

Each lot or living unit in Bella Vista is assessed $168.00 per year or $14.00 per month, irrespective of the number of owners listed on the deed. The POA derives its revenue from these property owner assessments as well as user fees for the use of the facilities.

Membership in the POA requires ownership of a lot or living unit. Evidence of ownership must be registered with the POA to acquire membership privileges. Only two persons are permitted full membership privileges per lot; however, membership cards are issued in the name of the first person on the deed of ownership. If they meet certain criteria, dependents of persons with full membership privileges may obtain a dependent membership.

The record reveals that historically the POA sent a ballot to the first name appearing on the deed for each lot or living unit. The elections were conducted on a one lot, one vote basis, even if members owned multiple lots. Since 1982, however, multiple lot owners were sent only one ballot regardless of the number of lots owned.

Bella Vista Village is subject to the Declaration and Protective Covenants originally filed in 1965 and governed by its Articles of Incorporation. Membership in the POA and voting rights of the members are provided for in the Declaration, Articles of Incorporation, and Bylaws of the POA. The provisions are virtually identical. Article III of the Declaration provides:

> *Section 1. Membership.* The Developer, its successors and assigns, shall be a member of the Club so long as it shall be the record owner of a fee, or an undivided fee, interest in any Lot or Living Unit which is subject by covenants of record to assessment by the Club, and the Developer shall also be a member until it is paid in full for every such Lot or Living Unit which it shall sell. Also, every person or entity who is a record owner of a fee, or undivided fee, interest in any Lot or Living Unit which is subject to covenants of record to assessment by the Club and who shall have paid the Developer in full for the purchase price of the Lot or Living Unit, shall be a member of the Club, provided that any such person or entity (except the Developer) who holds such interest merely as security for the performance of an obligation shall not be a member.

> *Section 2. Voting Rights.* Every member of the Club shall be entitled to one vote in the election of directors of the Club, but for all other purposes there shall be two classes of voting memberships:

Class A. Class A members shall be all those persons or entities as defined in Section 1 with the exception of the Developer, who have paid the Developer in full for the purchase price of the Lot or Living Unit. Class A members shall be entitled to one vote for each Lot or Living Unit in which they hold the interests required for membership by Section 1. When more than one person holds such interest or interests in any Lot or Living Unit all such persons shall be members, and the vote for such Lot or Living Unit shall be exercised as they among themselves determine, but in no event shall more than one vote be cast with respect to any such Lot or Living Unit.

Class B. Class B member shall be the Developer. The Class B member shall be entitled to ten votes for each Lot or Living Unit of which it is the record owner and which is subject by covenants of record to assessment by the Club until it shall have conveyed the Lot or Living Unit by deed to a purchaser and shall have been paid in full for such Lot or Living Unit. The Developer shall continue to the right to cast votes as aforesaid (ten votes for each Lot or Living Unit) even though it may have contracted to sell the Lot or Living Unit or may have same under a mortgage or deed of trust.

For purposes of determining the votes allowed under this Section, when Living Units are counted, the Lot or Lots upon which such Living Units are situated shall not be counted.

The appellants argue that this issue was previously litigated in *Buck* v. *Medin*, No. E-88-441-2 (Benton County Chancery, May 25, 1988) and that, pursuant to that decision, each member of the POA should have a vote in the election of the Board of Directors. The chancellor in *Buck* found that Ark. Code Ann. § 4-28-212 (1987), the Declaration, and Articles of Incorporation adopted the principle of "one man, one vote" and that every member of the POA was entitled to one vote in the election of the directors.

However, the chancellor in the case at bar found that Act 672 of 1989, which amended § 4-28-212(a) by adding the second sentence, modified the decision in *Buck* so that only one ballot should be distributed for each lot. Section 4-28-212(a) (1991) provides:

> (a) Each member shall be entitled to one (1) vote in the election of the board of directors. *Where more than one (1) membership is held by a single entity, the member shall be entitled to one (1) vote for each such membership.* (Emphasis added.)

The chancellor held that the statute read in conjunction with the Declaration and Articles of Incorporation mandated that no more than one vote per lot could be exercised in the election of the Board of Directors.

■ We agree with the chancellor. The decision in *Buck* is consistent with a fair reading of § 4-28-212(a) prior to the 1989 amendment. However, the "one man, one vote" rule enunciated therein was modified by the amendment, which clearly allows multiple votes to be cast where more than one "membership" is held. Insomuch as the Declaration defines membership in terms of interest in any "Lot or Living Unit," we think it clear that the effect of the 1989 amendment was to permit voting to be conducted on the basis of one vote per lot, as had been done historically.[2] We find no error, and we affirm.

Affirmed.

JENNINGS, C.J., concurs.

ROBBINS, J., dissents.

---

[2] The dissenting opinion concerns itself largely with a fact situation not presented in the case at bar, i.e., one in which three hypothetical brothers take title to a lot as tenants in common after paying a *pro rata* share for it. Although it is a fundamental principle of appellate review to refrain from deciding issues not before the Court, I feel constrained to point out that the dissent's solution which would allow each of the hypothetical brothers full voting rights would permit any organized group to cheaply and effectively dominant the Property Owners Association by the simple expedient of arranging for the purchase of one lot by hundreds (or thousands) of members taken in common. It is to avoid such absurdities that we adhere to deciding issues on a case-by-case basis. *See generally*, 5 Am. Jur. 2d *Appeal and Error* § 725 (1962).

JOHN B. ROBBINS, Judge, dissenting. This court upholds the trial court's determination that in an election of the board of directors of Bella Vista Property Owners Association, only one vote may be cast for each lot in Bella Vista, even though a lot may have multiple owners. With all due respect to the learned chancellor and my fellow appellate judges, I must dissent.

The fallacy of this decision can be illustrated with a hypothetical factual situation. Assume that a lot in Bella Vista is purchased by three brothers, John, Bill, and Jim Smith, and they take title as tenants in common, with each brother owning a one-third undivided interest. Assume further, that these brothers are not purchasing the lot as partners. The trial court's holding, which is not found clearly erroneous by the majority of this court, limits the Smith brothers' voting rights in an election for board of directors of the POA to one vote, collectively, for the three of them.[1]

The trial court and the majority of this court relied, primarily, on three sources of authority in reaching a decision, i.e., the Articles of Incorporation and Declaration of Covenants and Restrictions; an earlier case decided by this same chancery court in *Buck* v. *Medin*, No. E-88-441-2 (Benton County Chancery, May 25, 1988); and Ark. Code Ann. § 4-28-212(a) (1991).

Sections 1 and 2, Article III, of the Declaration of Covenants and Restrictions, in pertinent part, are identical to Articles IV and V of the Articles of Incorporation, and provide that "every person or entity who is a record owner of a fee, or undivided fee, interest in any Lot . . . shall be a member. . . ." These

---

[1] The majority opinion suggests that this hypothetical situation is not presented in the case at bar, however, I believe the evidence suggests that it may be. Mr. Larry Frost, management analyst for the Bella Vista Property Owners Association, testified at the trial as follows:

A. It [one ballot] goes to the person listed first on the deed.
Q. That's true of any multiple holding, whether they are tenant by the entirety, a husband and wife situation or a joint tenant or tenants in common, the first person on the deed gets one ballot?
A. That's correct.

Furthermore, the trial court's holding that "in the election for the Board of Directors, no more than one vote may be cast for each Lot" does not make exception for tenancies in common such as is presented by this hypothetical.

documents further provide that in all elections *other than for directors*:

> [w]hen more than one person holds such interest or interests in any Lot or Living Unit all such persons shall be members, . . . but in no event shall more than one vote be cast with respect to any such Lot or Living Unit.

This limitation of one vote per lot is conspicuously and significantly absent in the portion of this section which addresses voting rights in elections for directors and in contrast provides that "every member . . . shall be entitled to one vote in the election of directors. . . ."

Consequently, by the plain meaning of this language, if a lot is owned by multiple members, such as the Smith brothers, each of these members is entitled to a vote in an election for the board of directors. However, a member may cast only one vote even though he owns or has an interest in more than one lot.

The trial court construed the Articles of Incorporation and Declaration of Covenants and Restrictions to evidence an intent that only one vote per lot may be cast in an election of the board of directors. It specifically relied on the definition of a "member" and the requirement that a member be a person or entity owning a fee or undivided fee interest in a Lot or Living Unit, "who shall have paid the Developer in full for the purchase price of the Lot or Living Unit." I fail to see, however, how this language could not, and does not, apply equally to the three Smith brothers who has each paid his pro rata share of the purchase price in full, as well as to an individual who purchases a lot in his sole name and pays the full purchase price. The obvious intent of this requirement is that a person does not become a member until the purchase price due the original developer is paid in full.

The language of the Articles and Declaration is consistent with the first sentence of Ark. Code Ann. § 4-28-212(a) which provides; "each member shall be entitled to one (1) vote in the election of the board of the directors." This analysis is the same as was apparently made by the Benton County Chancellor in a 1988 case involving the POA. *Buck* v. *Medin*, No. E-88-44-2. In that case, which was not appealed, the trial court held:

> 4. The said statute, covenants and articles adopt the

principle of "one man, one vote" in the election of the directors of the Bella Vista property owners association; that is, that every member of the Association is entitled to one vote and no more in the election of directors. The "one lot, one vote" rule as well as other rules apply to other elections conducted for other purposes."

Not long after this decision, our legislature enacted Act 672 of 1989, the title of which suggested that it dealt with proxy voting. However, it also added a second sentence to Ark. Code Ann. § 4-28-212(a) and provided that in the election of a board of directors of a non-profit corporation, "where more than one (1) membership is held by a single entity, the member shall be entitled to one (1) vote for each such membership." The majority of this court now holds that this one-sentence amendment accomplished not one, but two, very significant changes in elections of directors. Firstly, an owner of multiple lots now has a vote for each lot owned. This is consistent with the plain meaning of the language of this amendment. The second change, which the majority of this court agrees was accomplished by this amendment, is that multiple members/ owners of a single lot no longer have one vote each, as was provided by the Articles of Incorporation and Declaration of Covenants and Restrictions and clearly stated in the first sentence of Ark. Code Ann. § 4-28-212(a), but now may only participate with the other undivided interest members/owners of the lot in arriving at one collective vote for that lot. This, I submit, is judicial legislation. I believe Judge Cooper's dissenting opinion in *Palmer* v. *State*, 31 Ark. App. 97, 103, 788 S.W.2d 248, 251-252 (1990) is relevant and a fitting commentary on the court's majority opinion in this case:

[O]ur role is not to legislate, but instead to apply the statutes of which the legislature has seen fit to enact according to their plain and unambiguous meaning.

I believe that the majority has departed from that role by construing the statutes involved in such a way as to affirm the trial court's action. This was wrong for several reasons. First, the statutes are unambiguous and require no construction or interpretation. Second, even if statutory construction has been required, we lack jurisdiction to perform that function under Rule 29 [now Rule 1-2] of the

Rules of the Supreme Court and the Court of Appeals. Finally, even if these statutes actually required construction and we were authorized to do so, the construction adopted by the majority would be erroneous.

The subject statute, the Articles of Incorporation and Declaration of Covenants and Restrictions, and the earlier decision in *Buck* v. *Medin* are clear and unambiguous, and we err by failing to apply their plain meaning. I would reverse the trial court's decision because I believe all three sources of authority clearly recognize that each member/owner of a multiple-owner lot has one vote each in the election of the board of directors.[2]

---

[2] The majority makes an *ad terrorem* argument that an absurd situation could develop should each member who owned an undivided interest in a lot be entitled to a vote in an election for board of directors. If such result should occur, the POA could amend its articles and declaration, and seek legislative relief. Neither of such actions would be subject to the obstacle of "one member, one vote" which only applies to elections of the board of directors.