The Honorable Shirley Borhauer State Representative 23 Kenilworth Drive Bella Vista, Arkansas 72714-4528
Dear Representative Borhauer:
I am writing in response to your request, on behalf of a constituent, for an opinion regarding the possible use of funds by the existing Bella Vista Village to temporarily finance the City of Bella Vista, if incorporation of the area is approved in the upcoming incorporation election. Specifically, you have enclosed a copy of a letter from a constituent, who notes that the bulk of the income to Bella Vista Village "comes from assessments." He poses three questions regarding this topic:
 1. Since we are a NON-profit corporation, what are, if any, the legal aspects of us using Bella Vista Village funds to finance a town until they are dependent on turnback funds received from the state and county?
 2. Do out of state residents have any recourse against the village if their funds are used for financing a town they had no vote in funding?
 3. Does Arkansas law Article 12, Section # 5 have any bearing on this issue?
RESPONSE
It is impossible to address your first question without reference to the exact manner in which the funds would be used, the particular incorporation documents and by-laws pertaining to the property owners' association, and all other pertinent facts surrounding the "financ[ing]." A similar conclusion attends your second question. I must also note in response to your first and second questions that I am prohibited by statute from the private practice of law and therefore cannot offer advice as to how or whether certain private parties would have recourse against another private entity. In my opinion the answer to your third question will depend upon the facts. I will note, however, that Arkansas Constitution, art. 12, § 5 prevents a municipality from becoming a stockholder in, or donating or appropriating funds to private entities. It does not appear to apply in the general context of your questions, which concern the reverse situation — a private entity providing funds or "financ[ing]" to a municipality.
Question 1 — Since we are a NON-profit corporation, what are,if any, the legal aspects of us using Bella Vista Village fundsto finance a town until they are dependent on turnback fundsreceived from the state and county?
The nature of Bella Vista Village was described in Morris v.Medin, 43 Ark. App. 29, 858 S.W.2d 142 (1993), as follows:
 Bella Vista Village, originally incorporated as the Bella Vista Country Club, is a nonprofit corporation organized under the laws of the State of Arkansas. It is a recreational retirement community developed by Cooper Communities, Inc., formerly known as Cherokee Village Development Company, Inc., consisting of approximately 37,000 lots or living units, approximately 4,000 of which are improved. The POA owns and operates recreational facilities consisting of golf courses, swimming pools, tennis courts, clubs and restaurants, among other facilities and common properties. The POA also provides water and sewer facilities, fire protection, emergency services, and police protection through the Benton County Sheriff's Office.
Id. at 30.
The relationship between the nonprofit corporation and the POA was more recently described in Hutchens, v. Bella Vista VillageProperty Owners' Association, 82 Ark. App. 28, 110 S.W.3d 325
(2003):
 Bella Vista Village is a planned residential and commercial community that was formed in 1965. In accordance with the terms of the Bella Vista Declaration, the . . . Bella Vista Village Property Owners' Association (POA), was established to manage the affairs of Bella Vista Village. Every Bella Vista property owner is a member of the POA, and their property is subject to the declaration.
Id. at 31.
As your constituent notes, an election is scheduled in conjunction with the November general election on the question of whether to incorporate certain territory comprising Bella Vista Village into a municipality. Your first question asks what the "legal aspects" are of using Bella Vista Village funds to "finance" a town until they are dependent on turnback funds received from the state and county.
Unfortunately, I am unable to address this issue without more specific information as to any proposed used of funds. You have not indicated how the funds of the nonprofit corporation would be used to "finance" the town, or how such use would be authorized. It is impossible for me to come to any conclusions in this regard without any pertinent facts. As a general matter, Arkansas nonprofit corporations are governed by the "Arkansas Nonprofit Corporation Act" (A.C.A. §§ 4-28-201-206 and §§ 4-28-209-224 (Repl. 2001)), or by the "Arkansas Nonprofit Corporation Act of 1993" (A.C.A. §§ 4-33-101 to -1707 (Repl. 2001 and Supp. 2005)), and by their articles of incorporation, bylaws, and by the votes of the membership taken pursuant thereto. I cannot come to any legal conclusions about the "legal aspects" of using the funds of the nonprofit corporation to "finance" any resulting municipality without reference to all the pertinent facts and documents. In any event, I am prohibited by statute from the private practice of law. See A.C.A. § 25-16-701. I thus cannot offer legal advice to members of a nonprofit corporation.
Question 2 — Do out of state residents have any recourseagainst the village if their funds are used for financing a townthey had no vote in funding?
A similar result obtains with regard to this question. I am prohibited from the private practice of law. A.C.A. § 25-16-701. I therefore cannot offer advice as to how or whether certain private parties would have recourse against another private entity.
Question 3 — Does Arkansas law Article 12, Section # 5 haveany bearing on this issue?
In my opinion the answer to this question would depend upon the applicable facts. Arkansas Constitution, art. 12, § 5 provides as follows:
 No county, city, town or other municipal corporation shall become a stockholder in any company, association or corporation; or obtain or appropriate money for, or loan its credit to, any corporation, association, institution or individual.
I cannot determine in the absence of any pertinent facts, whether any proposed "financing" of a newly incorporated municipality by a nonprofit corporation would transgress the provision above. I will note, however, that Arkansas Constitution, art. 12, § 5
prevents a municipality from becoming a stockholder in, or from donating or appropriating funds to private entities. It does not appear to apply in the general context of your questions, which concern the reverse situation — a private entity providing funds or "financ[ing]" to a municipality. This constitutional provision operates as a restriction against municipalities, not as a restriction against actions taken by nonprofit corporations.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh